IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| GREGORY ELLIOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:04-CV-612 |
| | ) | |
| HOUSEHOLD BANK, | ) | |
| ARIEL MENDOZA, | ) | |
| FINKELSTEIN, KERN, STEINBERG & | ) | |
| CUNNINGHAM, | ) | |
| TIMOTHY L. EDINGTON, | ) | |
| RON CUNNINGHAM, | ) | |
| PAUL E. McLEMORE, and | ) | |
| JEFF D. RADER, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

This case is before the court on the motions to dismiss filed by remaining defendants Finkelstein, Kern, Steinberg & Cunningham ("FKSC") [doc. 41], Timothy L. Edington [doc. 43], Ron Cunningham [doc. 45], and Paul E. McLemore [doc. 47].[1] *Pro se* plaintiff has not responded. For the reasons that follow, each motion will be granted and this civil action will be dismissed.

---

[1] The other named defendants, Household Bank, Ariel Mendoza, and Jeff D. Rader, have previously been dismissed by orders of the court. [Docs. 33, 40, 49].

I.

*Factual Background*

Plaintiff filed his complaint on December 27, 2004, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") relating to an alleged "debt collection fraud racket" born "[i]n a back room of the Chicago Board of Trade." FKSC is a law firm which plaintiff alleges to be "a local facilitator of fraud and extortion for" defendant Household Bank. Plaintiff describes the underlying Household debt as "worthless commercial paper," a non-transferable credit card contract, and a "fraudulent security instrument." The core issue of plaintiff's RICO case is thus his contention that the Household debt is invalid.

Mr. Edington is alleged to be "a member of the enterprise" of FKSC. The court presumes that Mr. Cunningham and Mr. McLemore are members and/or employees of FKSC, but that is not made clear in the complaint.

Plaintiff accuses FKSC of "running a racket by taking money and property from parties situated similarly to [plaintiff] to satisfy nonexistent 'debts.'"

> Whenever necessary, scam artists such as Timothy L. Edington[] subject parties such as [plaintiff] to sham legal proceedings where [various facts are] never proved. When [state court] defendants raise any defense whatsoever, they are forced into submission by lawless acts of tyranny from public servants such as Jeff D. Rader . . . . The scam is complete when artists such as Timothy L. Edington, with the cooperation of bad character, bad behavior public servants like Jeff D. Rader, defraud parties such as [plaintiff].

2

[Complaint, p. 4].[2]

The complaint further alleges that:

> On November 18, 2004, . . . Edington filed a fraudulent security instrument that fraudulently claimed that [plaintiff] was indebted to HOUSEHOLD BANK (SB), N.A. in a sum in excess of twelve thousand dollars. Concisely, Edington advanced a writing which Edington knew was false, with the intention that [plaintiff] rely on the fraud to [plaintiff's] detriment. . . . A jury shall determine that Timothy L. Edington absolutely violated [RICO] by the fraud and extortion which occurred on November 18, 2004. In this episode of mischief, Edington secured Jeff D. Rader's sworn agreement to aide [sic] and abet in the defrauding of [plaintiff].

[Complaint, p. 5]. Plaintiff restates that "[o]n November 18, 2004, Timothy L. Edington secured agreement from Jeff D. Rader that Rader would help Edington defraud me." [Complaint, p. 6].[3] Plaintiff concludes that "[u]ndeniably, the defendants have used the courts for purposes of fraud and extortion." [Complaint, p. 9].

Appended to Judge Rader's prior motion to dismiss is a state court judgment which clarifies the above-recited allegations.[4] In Sevier County Sessions Court case number C0045683, Judge Rader entered a default judgment in favor of Household Bank against the present plaintiff. Parallel to the allegations of the instant complaint, the default judgment is dated November 18, 2004, and is for "a sum in excess of twelve thousand dollars"

---

[2] The court has previously noted that defendant Rader is a judge in the General Sessions Court of Sevier County, Tennessee. [Doc. 39].

[3] Although the complaint focuses primarily on defendants Rader and Edington, plaintiff also accuses defendants Cunningham and McLemore of "falsely alleg[ing]" that Household Bank and/or FKSC "had a claim against me[.]"

[4] Each of the present movants asks the court to "incorporate and consider" the judgment.

3

($12,361.06).[5]

II.

*Authority*

The Federal Rules authorize dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A Rule 12(b)(6) motion tests whether a cognizable claim has been pleaded in the complaint." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

"When evaluating a motion to dismiss brought pursuant to rule 12(b)(6), the factual allegations in the complaint must be regarded as true. The claim should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983) (internal citation omitted). "Although this standard for Rule 12(b)(6) dismissals is quite liberal, more than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements. In practice, a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid*, 859 F.2d at 436 (emphasis in original) (internal citations and quotations omitted).

---

[5] There is no indication that plaintiff defended against the Sessions Court complaint or that he appealed Judge Rader's order.

If "matters outside the pleading are presented to and not excluded by the court," a Rule 12(b)(6) motion is generally then converted to one for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(b). The burden is then placed upon the movant to demonstrate that there is no genuine issue of disputed material fact. *See* Fed. R. Civ. P. 56(c).

There are exceptions to this general rule. Documents attached to a 12(b)(6) motion are considered part of the pleadings if they are: (1) central to the plaintiff's claim; and (2) referred to in the plaintiff's complaint. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997). As the court has previously noted, it is apparent from the record that the November 18, 2004 $12,361.06 Sessions Court judgment order relates to the same "sum in excess of twelve thousand dollars" referred to in plaintiff's complaint and represents "the defendants['] [purported use of] the courts for purposes of fraud and extortion." Because the order is referenced in, and is central to, plaintiff's claim, the court can accordingly consider that document in resolving the present motions under Rule 12(b)(6).[6]

Lastly, the court notes that *pro se* complaints are entitled to a degree of liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652

---

[6] In the alternative, the court could consider the order under the "public records" exception. *See New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003). Further, even if the court were to treat the present motions as ones for summary judgment, the result would be the same. There is absolutely no genuine issue of material fact as to the defendants' liability, and the court thus concludes that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

5

(1972). However, this less stringent standard "does not compel the courts to conjure up unpleaded facts to support conclusory allegations." *Steen v. Detroit Police Dep't*, No. 92-2409, 1993 WL 219875, at *1 (6th Cir. June 21, 1993) (citation and quotation omitted).

III.

*Analysis*

Having considered the Sessions Court judgment, plaintiff's present complaint must be dismissed under the doctrine of collateral estoppel, which bars a second suit between the same parties or their privies as to issues which were actually litigated and determined in a former suit, and which were necessary to the judgment in that suit, "even though based upon a different cause of action[.]" *See Massengill v. Scott*, 738 S.W.2d 629, 632 (Tenn. 1987) (citation omitted). In determining the preclusive effect of the underlying Sessions Court judgment, this court must first look to Tennessee state preclusion law. *See Marrese v. American Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 381, 105 S. Ct. 1327, 1332, 84 L. Ed. 2d 274 (1985). If Tennessee courts would accord the judgment preclusive effect, then this court must do likewise unless Congress has expressly or impliedly created an applicable exception to this general rule. *Marrese*, 470 U.S. at 381, 386, 105 S. Ct. at 1332, 1335; *Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315, 317 (6th Cir. 1997).[7]

As noted above, Tennessee courts apply the doctrine of collateral estoppel to issues that were actually litigated and determined in a former suit between the same parties

---

[7] The court's research reveals no such exception pertaining to RICO claims.

or their privies if the issues were necessary to the judgment in that suit. *Massengill*, 738 S.W.2d at 632. The underlying Sessions Court litigation was a suit between the same parties now before this court (Household Bank and the present plaintiff).

At the core of each suit is the issue of the validity of the disputed debt. Although the Sessions Court case culminated in a default judgment, it is apparent that this issue was well-pleaded, properly raised, and - thus - "actually litigated" in that case. *See Rally Hill Prods., Inc. v. Bursack (In re Bursack)*, 65 F.3d 51, 54 (6th Cir. 1995) (citing and quoting *Lawhorn v. Wellford*, 168 S.W.2d 790, 792 (Tenn. 1943)).

> Even a default judgment satisfies Tennessee's "actually litigated" requirement: A judgment taken by default is conclusive by way of estoppel in respect to all such matters and facts as are well pleaded and properly raised, . . . and such issues cannot be relitigated in any subsequent action between the parties and their privies.

*Id*. Lastly, the court concludes that resolution of the validity of the $12,361.06 debt was "necessary to the judgment" in Sessions Court, as that litigation resulted in a judgment order in favor of Household Bank on that very debt.

Plaintiff could have raised his civil RICO issue in state court, *see Tafflin v. Levitt*, 493 U.S. 455, 110 S. Ct. 792, 107 L. Ed. 2d 887 (1990), and could have done so in the Sevier County General Sessions Court. *See, e.g., Tennessee ex rel. Pierotti v. 777 N. White Station Rd., Memphis, Tenn.*, 937 F. Supp. 1296 (W.D. Tenn. 1996). The Sessions Court ruling, even though it was a true default judgment, collaterally estops plaintiff from now challenging the validity of Household Bank's claim. *See Calvert*, 105 F.3d at 322 (noting

7

the estoppel effect of a true default judgment where permitted by state law). We "have a system of law which expects, and in fact demands, that individuals sued respond to the suit and which subjects to liability those who do not." *Id.* at 321.

Because plaintiff is estopped from challenging the purported "fraudulent claim" upon which his RICO complaint is based, defendants' motions to dismiss must be granted. An order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan<br>United States District Judge